1   Julie Cavanaugh-Bill (State Bar No. 11533)
2   Cavanaugh-Bill Law Offices
3   Henderson Bank Building
4   401 Railroad Street, Suite 307
5   Elko, NV 89801
6   (775) 753-4357
7   julie@cblawoffices.org
8
9   William Falk (Utah Bar No. 16678) *Pro Hac Vice Application To Be Filed*
10  2980 Russet Sky Trail
11  Castle Rock, CO
12  (319) 830-6086
13  falkwilt@gmail.com
14
15  Terry J. Lodge (Ohio Bar No. 29271) *Pro Hac Vice Application To Be Filed*
16  316 N. Michigan St., Suite 520
17  Toledo, OH 43604-5627
18  (419) 205-7084
19  tjlodge50@yahoo.com
20
21  Attorneys for Reno-Sparks Indian Colony and Atsa koodakuh wyh Nuwu
22
23                  **UNITED STATES DISTRICT COURT**
24                      **DISTRICT OF NEVADA**
25  _____
26  WESTERN WATERSHEDS PROJECT,          ) Case No. 3:21-cv-103-MMD-CLB
27  *et al.,*                             )
28          Plaintiffs,                   )   **RENO-SPARKS INDIAN**
29                                        )   **COLONY AND ATSA**
30  and                                   )   **KOODAKUH WYH NUWU/**
31                                        )   **PEOPLE OF RED MOUNTAIN**
32  RENO-SPARKS INDIAN COLONY and ATSA )   **MOTION TO INTERVENE**
33  KOODAKUH WYH NUWU/ PEOPLE OF RED )
34  MOUNTAIN                              )
35                                        )
36          Plaintiff-Intervenor,         )
37  v.                                    )
38                                        )
39  UNITED STATES DEPARTMENT OF THE      )
40  INTERIOR, *et al.,*                   )
41                                        )
42          Defendants                    )
43                                        )

                              1

1  and                                              )
2                                                   )
3  LITHIUM NEVADA CORP.                             )
4                                                   )
5          Defendant-Intervenor                     )
6  _____ )
7
8          The Reno-Sparks Indian Colony and Atsa koodakuh wyh Nuwu/People of

9  Red Mountain, by and through local counsel Julie Cavanaugh-Bill and out-of-

10 state counsel William Falk and Terry Lodge (who are submitting *pro hac vice*

11 applications and will comply with LR IA 11-2 within 14 days), hereby move for

12 leave to intervene as plaintiffs in the captioned action as a matter of right,

13 pursuant to Fed.R.Civ.P. 24(a)(2). Alternatively, the Reno-Sparks Indian Colony

14 and Atsa koodakuh wyh Nuwu/People of Red Mountain move to be permitted to

15 intervene as plaintiffs pursuant to Fed.R.Civ.P. 24(b).

16         In support of their motion, the Reno-Sparks Indian Colony and Atsa

17 koodakuh wyh Nuwu/People of Red Mountain respectfully refer the Court to their

18 memorandum of points and authorities in support of their motion, and

19 the proposed complaint attached hereto.

20 Dated this 20th day of July, 2021.

21                                 By: /s/Julie Cavanaugh-Bill
22                                 Julie Cavanaugh-Bill (State Bar No. 11533)
23                                 Cavanaugh-Bill Law Offices
24                                 Henderson Bank Building
25                                 401 Railroad Street, Suite 307
26                                 Elko, NV 89801
27                                 (775) 753-4357
28                                 julie@cblawoffices.org
29

1

2

**Memorandum of Points and Authorities**

3  The Applicants-Intervenors Reno-Sparks Indian Colony, a recognized tribe

4  and Atsa koodakuh wyh Nuwu/People of Red Mountain, an unincorporated

5  association (together "Intervenors") submit this memorandum supporting their

6  motion to intervene as plaintiffs in this case.

7  The Reno-Sparks Indian Colony ("RSIC") is a federally recognized tribal

8  government formed in 1936 under the federal Indian Reorganization Act. Located

9  in Reno, Nevada, the RSIC consists of 1,157 members from three Great Basin

10  Tribes – the Paiute, the Shoshone and the Washoe. RSIC attaches cultural and

11  religious significance to historic properties that will be affected by the Thacker

12  Pass Lithium Mine Project ("the Project").

13  Atsa koodakuh wyh Nuwu/People of Red Mountain ("the People") is an

14  unincorporated association of indigenous peoples who share the common cause

15  of enforcing their rights under federal law as members of the Fort McDermitt

16  Paiute and Shoshone Tribe.

17

**Introduction and Background**

18  The Intervenors seek to intervene in this action to challenge the Bureau of

19  Land Management's ("BLM") Record of Decision ("ROD") approving the Thacker

20  Pass Lithium Mine Project Plan of Operations. As noted above, the Reno-Sparks

21  Indian Colony attaches cultural and religious significance to historic properties

22  that will be affected by the Project. Declaration of Michon R. Eben, ¶ 6. Atsa

1   koodakuh wyh Nuwu/People of Red Mountain ("the People"), located somewhat

2   nearer to the Project, consists of members of the Fort McDermitt tribe who hold,

3   preserve and pass on oral histories about Thacker Pass ("Peehee mu'huh"),

4   regularly perform ceremonies in Peehee mu'huh, hunt and gather in Peehee

5   mu'huh, plan on performing ceremony, hunting, and gathering in Peehee mu'huh

6   in the future, and are concerned with the Project's effects on historic properties

7   located within its footprint. Declaration of Daranda Hinkey, ¶¶ 3-4. The original

8   name for Thacker Pass in the local Numic dialect spoken by members of Atsa

9   koodakuh wyh Nuwu/People of Red Mountain is "Peehee mu'huh," which will be

10   used instead of "Thacker Pass."

11       Intervenors maintain that BLM's ROD violated the National Historic

12   Preservation Act ("NHPA") 16 U.S.C. §§ 470 *et seq.*, and the Administrative

13   Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.* because BLM issued the ROD

14   before complying with the NHPA's Section 106 requirements requiring

15   meaningful government-to-government consultation with Indian tribes and before

16   complying with NHPA's Section 106 requirements pertaining to seeking and

17   considering the views of the public in a manner that reflects the nature and

18   complexity of the undertaking. Notwithstanding these violations, Defendant-

19   Intervenor Lithium Nevada Corp. ("Lithium Nevada") still intends to begin

20   destructive, mechanical trenching operations in Peehee mu'huh as soon as July

21   29, 2021.

The NHPA requires that the BLM must complete the Section 106 process prior to the approval of the expenditure of any Federal funds on the undertaking, or prior to the issuance of any license. The BLM did not complete the section 106 process with the Intervenors prior to issuing the ROD. It appears that the BLM is poised to issue a permit to Lithium Nevada to begin desecration of Peehee mu'huh without completing the Section 106 process with the Intervenors and other Indian tribes, too.

In light of their interest in completing the NHPA Section 106 process before the ROD or any archaeological permits are issued, the Intervenors meet the standards either for intervention as of right under Fed.R.Civ.P. 24(a), or for permissive intervention under Fed.R.Civ.P. 24(b).

**Intervention Standards**

Intervention as a matter of right is governed by Fed.R.Civ.P. 24(a), which provides:

> On timely motion, the court must permit anyone to intervene who… claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. Fed. R. Civ. P. 24(a)(2).

When analyzing a motion to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), the Court applies a four-part test:

"(1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the

action." *Wilderness Soc'y v. U.S. Forest Serv*., 630 F.3d 1173, 1177 (9th Cir. 2011).

In evaluating whether Fed.R.Civ.P. 24(a)(2) requirements are met, the Court follows "practical and equitable considerations" and construes the rule "broadly in favor of proposed intervenors." *Id.* The court does so because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.*

Fed. R. Civ. P. 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who has a claim or defense that has a claim or defense that shares with the main action a common question of law or fact."

**Argument**

**I.      Intervenors' motion is timely because it is made early in the proceedings, does not prejudice the other parties, and the Intervenors have only recently learned of the threat to their interests.**

Courts weigh three factors in determining whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Peruta v. County of San Diego*, 771 F.3d 570 (9th Cir. 2014). "Although delay can strongly weigh against intervention, the mere lapse of time, without more, is not necessarily a bar to intervention." *US v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)

1    Intervenors seek intervention at an early stage of the proceedings. There

2    have been no hearings or rulings on substantive matters. The BLM has not yet

3    filed and served the administrative record with the Court. Intervenors are moving

4    to intervene over two months before the Plaintiffs' motion for summary judgment

5    and brief in support of their motion for judgment is due on September 24, 2021,

6    under the Joint Case Management Plan, and nearly five months before the

7    deadline for the Defendants' replies in support of summary judgment on

8    December 12, 2021.

9    Intervenors are moving to intervene before the preliminary injunction

10   hearing scheduled for July 21, 2021. In *Idaho Farm Bureau Federation v. Babbitt*,

11   58 F.3d 1392, (9th Cir. 1995), the 9th Circuit ruled that intervention by right was

12   properly granted where intervention was sought before there were hearings or

13   rulings on substantive matters and, although one party had moved for preliminary

14   injunction, intervention was sought before the preliminary injunction hearing. In

15   *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998),

16   the D.C. Circuit found that a district court erred when it denied an applicant's

17   motion to intervene even after "the district court had entered only a preliminary

18   injunction, not a permanent injunction."

19   "In evaluating prejudice, courts are concerned when 'relief from long-

20   standing inequities is delayed.'" *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659

21   (9th Cir.1978).

1    The parties will not be prejudiced by granting the Intervenors' Motion to

2  Intervene. Granting the motion would not delay relief from long-standing

3  inequities because the inequities are not long-standing. It has been less than five

4  months since the complaint in this case was filed. As stated above, there have

5  been no hearings or rulings on substantive matters. The BLM and LNC do not

6  have to file their separate replies in support of their motions for summary

7  judgment until December 13, 2021. The soonest that relief could be granted to

8  any party, then, is more than 5 months away.

9    The short delay between the Plaintiffs' filing and the Intervenors request to

10  intervene is first attributable to the late stage at which the Intervenors became

11  aware of the Thacker Pass Lithium Mine Project. Atsa koodakuh wyh

12  Nuwu/People of Red Mountain did not learn about the Project until February,

13  2021. Hinkey Declaration, ¶ 5. Despite the religious and cultural significance the

14  Reno-Sparks Indian Colony ("RSIC") attaches to Peehee mu'huh, RSIC did not

15  learn about the Project or plans to physically disturb the site pursuant to a

16  Historic Properties Treatment Plan until April, 2021. Eben Declaration, ¶ 9.

17  Regardless, "[a]lthough delay can strongly weigh against intervention, the mere

18  lapse of time, without more, is not necessarily a bar to intervention."  US v. Alisal

19  Water Corp., 370 F.3d 915, 921 (9th Cir. 2004)

20    The Project was fast-tracked at a time when the worst pandemic in at least

21  a hundred years was raging around the world. The Project's public commenting

22  period was held online while most of Atsa koodakuh wyh Nuwu live on the Fort

1 | McDermitt Paiute-Shoshone Reservation without reliable internet access.

2 | Meanwhile, RSIC never received notice of the Project.

3 | It has been difficult to ascertain what NHPA section 106 consultation the

4 | BLM actually has engaged in. Inexplicably, the Notice of Availability of the Final

5 | Environmental Impact Statement for the Proposed Thacker Pass Project,

6 | published December 4, 2020, stated that "[t]he BLM and Nevada SHPO recently

7 | executed a Memorandum of Agreement to resolve adverse effects to the 57

8 | historic properties."

9 | But, then, the Record of Decision contradicted the Notice of Availability

10 | and stated:

11 | "In accordance with the requirements of Section 106 of the National Historic
12 | Preservation Act, the BLM coordinated and consulted with the State Historic
13 | Preservation Office (SHPO). The BLM received a letter dated Wednesday,
14 | October 7, 2020, providing the SHPO's concurrence on the cultural resource report
15 | and finding of adverse effect. **A Memorandum of Agreement and treatment plan**
16 | **are being prepared**, and the BLM will continue to consult with the SHPO on the
17 | Project and treatment plan in accordance with programmatic protocols." (emphasis
18 | added).
19 |
20 | Moreover, on June 10, 2021, counsel for Intervenors filed a Freedom of

21 | Information Act Request for documentation of consultations the BLM has

22 | engaged in with Indian Tribes. However, despite being well outside the statutory

23 | timetable for the BLM to provide that documentation, BLM has not provided it.

24 | Another reason for the delay in filing is that the Intervenors sought to gain the

25 | BLM's agreement to delay physical disturbance of Peehee mu'uh until the

26 | Intervenors were adequately consulted under the NHPA without resort to legal

1   action. See: RSIC June 3 Correspondence to BLM Winnemucca; Atsa koodakuh

2   wyh Nuwu June 24 Correspondence to BLM Winnemucca.

3        It wasn't until May 27, 2021, when the Plaintiffs moved for a preliminary

4   injunction, that the Intervenors were made aware of the imminence of Lithium

5   Nevada's plans to begin physical disturbance of historic properties in Peehee

6   mu'huh. Based on the Plaintiffs' filings, it seems these plans surprised them, too.

7        On June 3, 2021, RSIC delivered a letter to Ester McCullough, District

8   Manager of the BLM, Winnemucca District Office, and Ken Loda, BLM,

9   Winnemucca Project Manager. Bryan Hockett, BLM Nevada State Archaeologist,

10   and Shannon Deep, BLM Winnemucca Archaeologist, were copied with the

11   letter. This letter described the BLM's failure to adequately consult regional tribes

12   and requested that the BLM halt any plans for mechanical trenching operations

13   and any other construction activities as part of the Project until meaningful

14   government-to-government consultation with all of the tribes that are connected

15   to Thacker Pass has concluded.

16        On June 24, 2021, Atsa koodakuh wyh Nuwu/People of Red Mountain,

17   through counsel, delivered a letter to McCullough, Loda, Hockett, and Deep,

18   requesting that the BLM prevent any desecration of Peehee mu'huh until Atsa

19   koodakuh wyh Nuwu/People of Red Mountain have had an adequate time to

20   consult with BLM about mitigating adverse effects to traditional cultural, and

21   historic, properties in Peehee mu'huh.

1    On July 12, 2021, RSIC received a short response from Kathleen Rehberg,

2    Field Manager, BLM Humboldt River Field Office, denying RSIC's request for

3    NHPA, Section 106 consultation on historic properties affected by the Thacker

4    Pass Project. The letter stated that the consultation period for the public and

5    Native American tribes opened in January 2020 and closed November 5, 2020.

6    With this illegal rejection of RSIC's request for government-to-government

7    consultation under the NHPA, section 106, it became clear to RSIC that it must

8    seek a court order to engage in NHPA, Section 106 consultation. See: Kathleen

9    Rehberg Letter to RSIC.

10   **II.      The Intervenors' interest in consultation under the Section 106**
11   **          process is significantly protectable.**
12

13   "An applicant has a 'significant protectable interest' in an action if (1) it asserts an

14   interest that is protected under some law, and (2) there is a 'relationship'

15   between its legally protected interest and the plaintiff's claims." *Donnelly v.*

16   *Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). "The 'interest' test is primarily a

17   practical guide to disposing of lawsuits by involving as many apparently

18   concerned persons as is compatible with efficiency and due process." *Wilderness*

19   *Soc'y v. U.S. Forest Serv*., 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *County*

20   *of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)

21   Here, the Intervenors have a significant interest in ensuring that land they

22   have often hunted, gathered, planted, and prayed on; the site of a massacre of

23   their ancestors; a place where their ancestors hid from soldiers coming to

1   violently force them on to reservations; artifacts created by their ancestors; an

2   obsidian quarry used by their ancestors; burial sites, and other cultural

3   resources, are not destroyed or desecrated by activities connected to a massive

4   lithium mine before the Intervenors, the general public, and Indian tribes have

5   been meaningfully consulted. This interest is clearly protected by the National

6   Historic Preservation Act and Administrative Procedure Act.

7        There is a relationship between the Intervenors' legally protected interest

8   and the Plaintiffs' claims. The Plaintiffs seek to enjoin construction of the Thacker

9   Pass Lithium Mine because the BLM failed to comply with the National

10  Environmental Policy Act. The Intervenors seek to enjoin construction of the Mine

11  because the BLM failed to comply with the Section 106 consultation

12  requirements of the National Historic Preservation Act.

13       The Plaintiffs and the Intervenors attempt two similar routes to the same

14  destination. In fact, the 9th Circuit has stated:

15  "A close statutory analog to NHPA is the National Environmental Policy Act
16  ("NEPA"), 42 U.S.C. §§ 4321-4370. What § 106 of NHPA does for sites of historical
17  import, NEPA does for our natural environment. Our circuit has already noted the
18  parallel: Both Acts create obligations that are chiefly procedural in nature; both
19  have the goal of generating information about the impact of federal actions on the
20  environment; and both require that the relevant federal agency carefully consider
21  the information produced. That is, both are designed to insure that the agency
22  "stop, look, and listen" before moving ahead." *San Carlos Apache Tribe v. US,* 417
23  F.3d 1091, 1097 (9th Cir. 2005) (internal citation omitted).
24
25       It is practical and compatible with efficiency and due process to allow

26  Intervenors to intervene. Intervenors have standing to file their proffered

27  complaint on behalf of their members, under the NHPA and APA. If Intervenors

1   instead are forced to file separately, their claims more than likely would be

2   combined with the Plaintiffs' claims anyway. If the court denies the Intervenors'

3   Motion to Intervene and the Plaintiffs' Motion for Preliminary Injunction under the

4   NEPA, then Intervenors would file a separate complaint, file for a temporary

5   restraining order, and seek a preliminary injunction under the NHPA. It would be

6   more efficient for the court and for all the parties to resolve the issues in one

7   preliminary injunction hearing.

8   **III.   Ruling in favor of the BLM and Lithium Nevada would impede the**
9   **Intervenors' ability to protect their interest in NHPA consultation.**
10

11   The Intervenors are so situated that the disposition of the action may impair or

12   impede their ability to protect their interests. The Ninth Circuit follows the

13   guidance of Rule 24 advisory committee notes "that state that '[i]f an absentee

14   would be substantially affected in a practical sense by the determination made in

15   an action, he should, as a general rule, be entitled to intervene." *Southwest*

16   *Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

17   Under the NHPA, the Intervenors have a significantly protectable interest in

18   meaningful and adequate consultation with the BLM before it permits the

19   desecration of Peehee mu'huh and before Lithium Nevada destroys Peehee

20   mu'huh. If the BLM and Lithium Nevada prevail, a massive open pit mine will be

21   constructed on a massacre site, historic properties, and hunting and gathering

22   grounds important to the region's Tribes.

To make matters more urgent, it appears that the Defendants and Lithium Nevada plan to desecrate Peehee mu'huh quickly if the Plaintiffs' Motion for Preliminary Injunction is denied. On May 13, 2021, Lithium Nevada informed Plaintiffs that it intended to begin ground disturbance as soon as June 23, 2021. On May 27, 2021, the Plaintiffs moved for a Preliminary Injunction. On June 8, 2021, in exchange for a two-week extension to file response briefs to the Plaintiffs' Motion for Preliminary Injunction, the BLM and Lithium Nevada stipulated that no Project area ground disturbance activities would occur before July 29, 2021.

The Plaintiffs have moved for a Preliminary Injunction to enjoin mechanical trenching operations on historic properties in Thacker Pass ostensibly authorized by a Historic Properties Treatment Plan under the NHPA. The Preliminary Injunction hearing is currently scheduled for July 21, 2021. If this Preliminary Injunction hearing is disposed of without the Intervenors and their claims under the NHPA, it is likely the BLM and Lithium Nevada will desecrate Peehee mu'huh in violation of the NHPA. This will impair the Intervenors' interest in meaningful consultation with the BLM about the destruction and desecration of land to which the Intervenors attach religious and cultural significance to before that land is destroyed and desecrated.

**IV.   The Intervenors are not adequately represented because no present party will make all of the Intervenors' arguments, no present party is capable of making such arguments, and the Intervenors offer necessary elements to the proceeding.**

1  "The burden on proposed intervenors in showing inadequate representation is

2  minimal, and would be satisfied if they could demonstrate that representation of

3  their interests 'may be' inadequate." *Trbovich v. United Mine Workers*, 404 U.S.

4  528, 538 n. 10 (1972). The Ninth Circuit "considers three factors in determining

5  the adequacy of representation: (1) whether the interest of a present party is

6  such that it will undoubtedly make all of a proposed intervenor's arguments; (2)

7  whether the present party is capable and willing to make such arguments; and

8  (3) whether a proposed intervenor would offer any necessary elements to the

9  proceeding that other parties would neglect." *California v. Tahoe Reg'l Planning*

10  *Agency*, 792 F.2d 775, 778 (9th Cir. 1986).

11      The Intervenors' interest in being consulted about activities that would

12  desecrate land to which they attach cultural and religious significance under the

13  NHPA is not adequately represented by the current parties in the action. As

14  Lithium Nevada has pointed out in its Response to the Plaintiffs' Motion for

15  Preliminary Injunction, the Plaintiffs have not challenged the Historic Properties

16  Treatment Plan approved by the BLM and State Historic Preservation Office

17  under the NHPA. None of the Plaintiffs represent the interests of Tribes or Native

18  Americans who visit and use Peehee mu'huh. Nor do the Plaintiffs bring any

19  claims under the NHPA.

20      It cannot be said, then, that the Plaintiffs will "undoubtedly" make all of the

21  Intervenors arguments. So far, in their Complaint, their Motion to Intervene, and

22  their Reply in Support of Motion for Preliminary Injunction, the Plaintiffs have not

made *any* arguments under the NHPA. Moreover, without any Tribal or Native

American plaintiffs, the Plaintiffs are not capable of making these arguments.

Finally, the BLM's and Lithium Nevada's plan to begin physical disturbance of

Peehee mu'huh under the Historic Property Treatment Plan are governed by the

NHPA. Arguments under the NHPA are necessary elements to the proceeding

that the current parties neglect. Therefore, representation of the Intervenors'

interests is inadequate and they should be permitted to intervene as a matter or

right.

**V.  The Intervenors meet the standards for permissive intervention, too.**

If the Court does not allow the Intervenors to intervene as of right, the

Court should grant the Intervenors permissive intervention. The Intervenors have

a claim that shares with the main action a common question of law or fact.

Namely, whether the BLM has fulfilled its obligations in permitting the Thacker

Pass Lithium Mine Project.

Fed. R. Civ. P. 24(b)(3) requires that, in exercising discretion to allow

permissive intervention, "the court must consider whether the intervention will

unduly delay or prejudice the adjudication of the original parties' rights." As

described above, no substantive hearings or rulings have been made. The action

is still nearly five months before the Court would rule on summary judgment,

which gives the parties ample time to respond to the Intervenors' claims. So,

granting the Intervenors permissive intervention will not unduly delay or prejudice

the original parties and permissive intervention is proper.

1      **WHEREFORE, t**he Reno-Sparks Indian Colony and Atsa koodakuh wyh

2    Nuwu/People of Red Mountain pray the Court grant them leave to intervene in

3    this matter, pursuant to Fed.R.Civ.P. 24(a)(2) or, alternatively, pursuant to

4    Fed.R.Civ.P. 24(b).

5

6                                    By: /s/Julie Cavanaugh-Bill
7                                    Julie Cavanaugh-Bill (State Bar No. 11533)
8                                    Cavanaugh-Bill Law Offices
9                                    Henderson Bank Building
10                                   401 Railroad Street, Suite 307
11                                   Elko, NV 89801
12                                   (775) 753-4357
13                                   julie@cblawoffices.org
14
15                                   William Falk, Esq (Utah Bar No. 16678)
16                                   2980 Russet Sky Trail
17                                   Castle Rock, CO 80101
18                                   (319) 830-6086
19                                   falkwilt@gmaail.com
20
21                                   Terry J. Lodge, Esq. (Ohio Bar No. 29271)
22                                   316 N. Michigan St., Suite 520
23                                   Toledo, OH 43604-5627
24                                   (419) 205-7084
25                                   tjlodge50@yahoo.com
26                                   Co-Counsel for Intervenors
27

28

29

30

31

32

1

## **CERTIFICATE OF SERVICE**

2

3   I hereby certify that on July 20, 2021, I filed the foregoing using the United States

4   District Court CM/ECF, which caused all counsel of record to be served

5   electronically.

6                                                        By: /s/Julie Cavanaugh-Bill

7                                                        Julie Cavanaugh-Bill (State Bar No. 11533)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

33

34

**EXHIBIT INDEX**

| EXHIBIT | DESCRIPTION | # OF PAGES |
|---|---|---|
| 1 | Reno-Sparks Indian Colony and Atsa koodakuh wyh Nuwu's Proposed Complaint | 22 |
| 2 | Declaration of Michon R. Eben In Support of Reno-Sparks Indian Colony and Atsa koodakuh wyh Nuwu's Motion to Intervene | 9 |
| 3 | Declaration of Daranda Hinkey In Support of Reno-Sparks Indian Colony and Atsa koodakuh wyh Nuwu's Motion to Intervene | 8 |
| 4 | Reno-Sparks Indian Colony June 3 Correspondence to BLM, Winnemucca | 3 |
| 5 | Atsa koodakuh wyh Nuwu June 24 Correspondence to BLM, Winnemucca | 5 |
| 6 | Kathleen Rehberg's Letter to Reno-Sparks Indian Colony | 1 |