Laura K. Granier (SBN 7357)
Erica K. Nannini (SBN 13922)
HOLLAND & HART LLP
5441 Kietzke Lane, Suite 200
Reno, NV 89511-2094
(775) 327-3000
(775) 786-6179 fax
lkgranier@hollandhart.com
eknannini@hollandhart.com

*Attorneys for Defendant-Intervenor*
*Lithium Nevada Corp.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT; GREAT BASIN RESOURCE WATCH; BASIN AND RANGE WATCH; and WILDLANDS DEFENSE, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR; U.S. BUREAU OF LAND MANAGEMENT; and ESTER M. McCULLOUGH, District Manager, BLM's Winnemucca Office, <br><br> Defendants, <br><br> and <br><br> LITHIUM NEVADA CORP., <br><br> Defendant-Intervenor. | Case No. 3:21-cv-00103-MMD-CLB <br><br> **RESPONSE IN OPPOSITION TO RENO-SPARKS INDIAN COLONY AND ATSA KOODAKUH WYH NUWU/PEOPLE OF RED MOUNTAIN'S MOTION TO INTERVENE** |

Defendant-intervenor Lithium Nevada Corp. opposes the motion to intervene filed by prospective intervenors Reno-Sparks Indian Colony ("RS Colony") and Atsa koodakuh wyh Nuwu/People of Red Mountain ("People" and, together with RS Colony, "Proposed Intervenors").

**PRELIMINARY STATEMENT**

Despite numerous prior authorizations for surface disturbance in the Thacker Pass area that included tribal consultation without objection or identification of impacts to the asserted tribal interests, just seventeen-hours before the Court heard oral argument on plaintiffs' motion for preliminary injunction Proposed Intervenors sought to join this case claiming for the first time that the Bureau of Land Management ("BLM") violated the National Historic Preservation Act of 1966 ("NHPA") by not consulting RS Colony or the People.[1]  This request should be denied as untimely and because the Proposed Intervenors acknowledge they have never, before June 2021, shared the information they now provide this Court about any interest in the Thacker Pass area despite numerous opportunities to do so.

At the outset, it is important to note how seriously the BLM and Lithium Nevada take tribal interests and the agency's consultation obligations.  The agency and the proponent have, for years, worked with the interested tribes on identifying and addressing concerns or issues.  None of those tribes have expressed concerns about their consultation process or prior approvals authorizing disturbance in the Thacker Pass area or the current authorization at issue before this Court.  It is also important to note (as discussed below) that the Proposed Intervenors' own attachments filed with this Court reflect that the BLM, although not required, in its discretion, has offered the Proposed Intervenors consultation for the pending "ARPA" permit which is a separate process from consultation for the overall project but also addresses their concerns of imminent harm.  What Proposed Intervenors do not share is whether they have accepted the BLM's invitation that they received July 12 and initiated that process of consultation offered to them.

---

[1] Lithium Nevada reserves its right to raise and does not waive any argument on the underlying merits of the proposed claim, including that prospective intervenors lack standing to bring any challenge under the Administrative Procedure Act that the NHPA was violated by the BLM. In fact, prospective intervenors' proposed complaint appears to hinge on relief sought improperly under the NHPA rather than judicial review under the Administrative Procedure Act for alleged violations of the NHPA. *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1096-97 (9th Cir. 2005) (Because the NHPA does not provide for a private right of action, the Administrative Procedure Act provides for judicial review of challenges to final agency actions under the NHPA.).

2

Prospective intervenors knew or should have known for months that any asserted interest under the NHPA was not being represented in this case, as no violations of the NHPA have been alleged. The motion to intervene was filed:

- One-hundred-eighty-six days after the BLM issued its record of decision ("ROD") approving the Thacker Pass Lithium Mine Project ("Project");
- One-hundred-forty-four days after plaintiffs began this lawsuit by filing a complaint that does *not* allege any violations of the NHPA (ECF 1); and
- Fifty-four days after plaintiffs moved for preliminary injunction (ECF 23).

Proposed Intervenors' purpose in deploying this surprise, last-minute motion to intervene is transparent: they sought to disrupt the orderly disposition of this litigation and progress at the project and were trying to delay any decision by this Court on plaintiffs' motion for preliminary injunction.

Proposed Intervenors assert that in early May 2021 they filed a petition on "Change.org" to stop the project and, therefore, obviously knew of the ROD at that time. (ECF 43-3 at ¶16). The RS Colony and The People assert that they speak as a different voice for the Fort McDermitt Tribe. (ECF 43-3 at ¶1-2 (describing the group as an "unincorporated association of members of the Fort McDermitt Paiute and Shoshone Tribe".))  The BLM consulted with the authorized representatives of the federally recognized tribes and, therefore, there is no legal basis to grant intervention based on individual members of a tribe now asserting different interests through the RS Colony or The People for the first time.  Because prospective intervenors knew or should have known for months that their interests were not being represented, their motion to intervene is not timely, and the Court need not consider any other elements required for intervention, either as of right or permissively.

Importantly, to the extent the Proposed Intervenors assert imminent harm from issuance of the permit under the Archaeological Resources Protection Act ("ARPA"), 43 C.F.R. Part 7, necessary for completion of the cultural resource mitigation that claim is not ripe and may never become ripe.  The BLM, in its discretion, requested Proposed Intervenors contact the BLM if they wanted to participate in the consultation process on issuance of the ARPA permit.  (ECF

3

43-6). Proposed Intervenors apparently have not availed themselves of this opportunity which, according to their own filing, they received notice of on July 12, 2021. If Proposed Intervenors are refusing to accept this offer from the BLM or delaying in responding in order to delay the issuance of the ARPA permit, their assertion of alleged harm is of their own making. While they assert irreparable harm from issuance of that ARPA permit and completion of the cultural resource mitigation, at the same time they appear to be refusing or delaying any opportunity to consult on that ARPA permit.

The prospective intervenors cannot establish that they have a significant protectable interest because (a) the People are not a tribe as defined under the NHPA, and (b) before this case was filed, the Proposed Intervenors never informed the BLM of the existence of any site used for religious reasons (through not only the multiple year process for this project but for numerous authorizations over the course of a decade of more). Proposed Intervenors also cannot establish that without intervention, their interest will be impeded or impaired because the BLM, in its discretion, has agreed to consult with them on the ARPA permit where they can identify any efforts they want to see in how the cultural resource mitigation is performed and protect their interest they just recently asserted.

For these reasons, and as discussed in more detail below, Proposed Intervenors' motion should be denied.

### ARGUMENT

**A.     Proposed Intervenors are not Entitled to Intervene as of Right**

Intervention as of right under Rule 24(a)(2) is permissible only when (a) the prospective intervenors have a significant protectable interest relating to the subject of the action; (b) the disposition of the action may, as a practical matter, impair or impede the prospective intervenors' ability to protect their interest; (c) the motion to intervene is timely; and (d) the existing parties may not adequately represent the prospective intervenors' interest. *Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir. 1998). Because prospective intervenors must meet *all* parts of this test, failure to satisfy any one of the criteria requires denial of their motion. *See id.* Proposed Intervenors' motion should be denied because it is not timely, they do not have a protectable

4

interest under the circumstances (and, given that they've been offered consultation for the ARPA permit but perhaps not availed themselves of that opportunity), and because Proposed Intervenors fail to establish that the disposition of this lawsuit, as a practical matter, would impair or impede their ability to protect their interest.

### 1. Proposed Intervenors' Motion to Intervene is Untimely

The Federal Rules of Civil Procedure permit a party to intervene only upon a "timely motion." Fed. R. Civ. P. 24(a)–(b). The United States Supreme Court has held that the timeliness of a motion to intervene is a threshold factor that must be satisfied before the other factors should be considered. *See NAACP v. New York*, 413 U.S. 345, 365 (1973) ("If [a motion to intervene] is untimely, intervention must be denied."); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) ("Timeliness is 'the threshold requirement' for intervention as of right." (citations omitted)). As Proposed Intervenors acknowledge, "delay can strongly weigh against intervention . . . ." (ECF 43 at 6 (citing *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004).

To determine timeliness, courts consider three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. Los Angeles Unified School Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). In analyzing these factors, courts should remember that "[t]he crucial date for assessing the timeliness of a motion to intervene is when prospective intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Id*. Based on these factors, prospective intervenors' motion to intervene is untimely.

**a) The parties have filed answers, negotiated a proposed scheduling order which the Court has accepted and extensively briefed a critical motion for preliminary injunction *before* the motion to intervene was filed.**

The first factor in determining timeliness is the stage of the proceeding in which intervention is sought. Substantive rulings by the Court often weigh against allowing intervention. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (concluding

5

that motion was timely where it had been filed "before the district court had made any substantive rulings"). There is no threshold amount of litigation activity required to make a motion to intervene untimely. *Kukui Gardens Corp. v. HOLDCO Capital Grp.*, 261 F.R.D. 523, 529 (D. Hawaii 2009) (upholding denial of intervention when the parties had litigated three motions to dismiss, had their Rule 16 scheduling conference, defendants had filed their answer and plaintiff had filed its answer to defendants' counterclaim). Here, the parties have litigated and the Court has ruled on a substantive and extensive motion for preliminary injunction, the BLM and Lithium Nevada both have filed answers (significant in length to respond to the Plaintiffs' sixty-nine page complaint), the parties have worked on and agreed to a scheduling order which has been approved by the Court, and the case is well underway to a substantive decision on the underlying merits which the Court has agreed to expedite. The timeline for the Court's decision on the merits is critical as recently discussed at the hearing on the motion for preliminary injunction. Defendant Lithium Nevada would be substantially prejudiced by any delay of a decision on the merits of the case, as demonstrated in the recent briefing on the preliminary injunction motion and Lithium Nevada's transparency about the construction schedule.

Here, five months after the filing of the Complaint, Proposed intervenors moved to intervene **seventeen hours** before the hearing on plaintiffs' motion for preliminary injunction. (ECF 43, 47) for which the Court has now issued its ruling. (ECF 48). Because the motion to intervene was filed on the eve of the preliminary injunction hearing, it was impossible for the motion to intervene to be briefed before the hearing. Thus, intervention is being sought *after* a substantive hearing and decision by this Court. The decision on whether to grant an injunction is generally one of the more critical rulings by the Court in matters involving violations of the Administrative Procedure Act. Given the extensive nature of the briefing by the existing parties, the substantive nature of the Court's decision denying plaintiffs' motion for preliminary injunction, and prospective intervenors' deliberate decision to wait until the eve of the hearing to seek intervention, this factor weights against intervention.

In addition, as discussed below, the BLM's multi-year review of the Project has been ongoing for some time and follows other BLM decisions authorizing surface disturbance in this

6

same area[2] that the Proposed Intervenors for the first time now assert is a Traditional Cultural Property ("TCP"). To allow such late intervention based on never before disclosed information of asserted interests[3] would substantially prejudice Lithium Nevada, especially if Proposed Intervenors are not held to the same briefing schedule already approved by the Court.[4]

### b) Lithium Nevada would be prejudiced by proposed intervenors' delayed intervention.

The second timeliness factor requires consideration of the extent of prejudice to the existing parties. The Ninth Circuit has held that "prejudice to existing parties is 'the most important consideration in deciding whether a motion for intervention is untimely.'" *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016) (quoting *United States v. State of Oregon*, 745 F.2d 550, 552 (9th Cir. 1984)). Thus, in assessing prejudice, the Ninth Circuit has emphasized that the only "prejudice" that is relevant under this factor is what flows from prospective intervenors' failure to intervene after they knew, or reasonably should have known, that their interests were not being adequately represented." *Id*.

Prospective intervenors claim that no party to this lawsuit will experience any prejudice because the case was filed five months ago, and that they sought to intervene before any substantive rulings were made by the Court. But they ignore the fact that they knew or reasonably should have known that the interest they now identify were not being represented for five months because plaintiffs have not asserted any claim that the BLM violated the NHPA or the consultation requirements imposed by that act. Prospective intervenors also ignore that the existing parties extensively briefed plaintiffs' motion for preliminary injunction, participated in

---

[2] *See* FEIS Table 2.1 (identifying 194 acres of existing authorized surface disturbance and 56.8 acres of existing disturbance to date at the time from prior authorizations for the Kings Valley Lithium Exploration Project, Kings Valley Clay Mine, Quinn River Valley Test Wells and Far East NOI).

[3] Proposed Intervenors assert (and testify through their declarations) they contacted the BLM in June 2021 which is several months after the agency completed its multi-year review process of the Project and issued its decision in January 2021.

[4] Lithium Nevada appreciates the Court's willingness to address the merits of the case on an expedited basis and believes this same Court's review of any claims allowed to be filed by Proposed Intervenors is in the best interest of all parties and judicial efficiency so long as it does not delay the Court's decision on the merits.

7

a substantive hearing on that motion one day after the motion to intervene was filed, and that the Court has ruled on the motion for preliminary injunction. Moreover, the activity that triggered the Plaintiffs' filing of that motion for preliminary injunction was cultural resource mitigation under the Historic Properties Treatment Plan ("HPTP") which the Proposed Intervenors also now claim would cause them irreparable harm (though, as discussed below, they were offered consultation for the ARPA permit process which must be completed prior to that same cultural resource mitigation work and they did not disclose whether they have availed themselves of that opportunity they knew of by no later than July 12, 2021).

Allowing intervention would force the existing parties to participate in another round of briefing on a motion for preliminary injunction when this case needs to move forward to dispositive motions. It may also lead to a motion to dismiss the Proposed Intervenors' new claim they intend to assert.[5] Lithium Nevada thus would be substantially prejudiced if prospective intervenors are allowed to intervene after this Court ruled that it would decide this case on the merits on an expedited basis and the existing parties have agreed to a briefing schedule – if such intervention led to a modified schedule delaying the Court's decision on the merits. As discussed herein, through the years of work on the current BLM decision before this Court (as well as numerous prior decisions authorizing disturbance in the area)[6] the Proposed Intervenors do not assert that they have ever, before June 2021, sought consultation or disclosed to the BLM that they have an interest in the Thacker Pass area.

Waiting until just **seventeen hours** before this Court's hearing on the Motion for Preliminary Injunction is prejudicial and inexcusable considering the BLM has spent years reviewing the project before rendering its decision (including substantial consultation with tribes who have not raised the concerns Proposed Intervenors recently asserted) and Lithium Nevada

---

illingness to address the merits of the case on an expedited basis and believes this same Court's review of any claims allowed to be filed by Proposed Intervenors is in the best interest of all parties and judicial efficiency so long as it does not delay the Court's decision on the merits.

[6] FEIS Table 2.1, Previously Authorized and Existing Surface Disturbance (citing, for example, BLM Casefile No. N85255, authorized Jan. 25, 2010, for 75 acres of surface disturbance for the Kings Valley Lithium Exploration Project & BLM Casefile No. N91547, authorized May 15, 2014 for 114 acres of disturbance for the Kings Valley Clay Mine).

8

has spent $10 million on the permitting process and has ongoing overhead and numerous employees working on the project to advance it into the next stage of development and production. This is an unfair by Proposed Intervenors who have threatened "direct action" to halt the project and now raise arguments that could have and should have been advanced years ago and, at a minimum, **months** ago when the case was first filed. Proposed Intervenors assert that in early May 2021 they filed a petition on "Change.org" to stop the project but do not explain why, even at that time, they did not seek intervention or even contact the BLM when they have a THPO who has expertise in section 106 and has worked for RS Colony since 2011. (ECF 43-3 at 7:3-6; ECF 43-2 at ¶3).

      **c)    Proposed Intervenors knew of the interest they have identified here for at least months before seeking to intervene.**

The final timeliness factor—the reason for and length of time during which the would-be intervenor knew of its interest before seeking leave to intervene—weighs against prospective intervenors. Although "[a] failure to realize that one's interests are in jeopardy until very late in the proceedings may make a late motion to intervene 'timely,'" *United States v. State of Wash.*, 86 F.3d 1499, 1506 (9th Cir. 1996), "[c]ourts generally have been reluctant to allow intervention when the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene," *League of United Latin Am. Citizens*, 131 F.3d at 1304 (citation omitted). "[T]he risks of waiting include[ ] possible denial of their motions to intervene as untimely." *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002).

Delay is measured from the date the prospective intervenor should have been aware that its interests would not be protected adequately by the parties. *See United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996) (citation omitted). Prospective intervenors' length of delay is at least three months (and likely much longer) after they knew or should have known of the interest they assert in this lawsuit. Yet they offer no justifiable reason for the delay in moving to intervene, except claiming it was not until plaintiffs moved for preliminary injunction that they learned about "the imminence of Lithium Nevada's plans to begin physical disturbance of

9

historic properties." (ECF 43 at 10). That contention is not credible. The People are members of the Fort McDermitt Paiute and Shoshone Tribe. The BLM engaged in government-to-government consultation with that tribe starting in 2018. (*See* FEIS at 4-120 to 4-121). Thus, the People's claim that they were unaware of the Project until February is undermined by their constructive notice of it through that consultation. The RS Colony admit they knew about the Project in April (ECF 43-2 ¶9). But they did not move to intervene for three months, requesting intervention on the eve of the preliminary injunction hearing. *See FTC v. Cardiff*, 830 F. App'x 844 (9th Cir. 2020) (the court upheld the district court's denial of intervention when the prospective intervenor waited two months to file its motion. The district court had rejected the prospective intervenor's argument that the delay was caused by its meet-and-confer attempts with the FTC, noting that the party should have realized early on that any such attempts would fail.). Proposed Intervenors' reason for and the length of their delay do not support the granting of their belated motion to intervene.

### 2. Prospective Intervenors' Failure to Timely Disclose the Information They Now Put Before this Court Undermines their assertion of a Protectable Interest

Again, Lithium Nevada fully recognizes and respects the importance of proper tribal consultation and has worked for several years to establish a partnership with tribes nearby and who have expressed interest in the Thacker Pass area and project.  What is concerning here is Proposed Intervenors' timing and acknowledgment that they will only **now** advise the BLM of the information that supports their asserted interest – years after multiple authorizations for surface disturbance in the area and nearly a year after completion of the consultation period for the ROD. (ECF 43-2 ¶20). Because consideration of all three timeliness factors weigh against granting Proposed Intervenors' motion, the Court does not even need to consider any of the other elements. *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011) ("Failure to satisfy any one of the requirements [for intervention] is fatal to the application, and we need not reach the remaining elements if one of the elements is not satisfied.") (alteration in original) (citation omitted) (quoting *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009)).

Proposed Intervenors acknowledge they disclosed their interest to the BLM for the first time in June 2021. They do not assert they had ever previously requested consultation though numerous project reviews and approvals have authorized previous disturbance in the Thacker Pass area. (ECF 43-2 at 6) Nor do they allege that they have ever previously notified the BLM of how important they assert the Thacker Pass area is to their members, made any effort to seek designation of the area as a TCP or otherwise requested notice of any activities proposed in the area given the interest they now assert. To allow such an eleventh-hour assertion of such an interest only long after completion of a federal agency's review of a proposed project would mean such approvals never have finality.

Although the Courts of Appeals are split on whether standing[7] is required for intervention as of right under Rule 24(a), and the question has not been definitively resolved in the Ninth Circuit, *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006), the better reasoned view is that Rule 24(a)'s "significant protectable interest" encompasses a standing requirement, such that one who seeks to intervene must satisfy the requirements of Article III standing and could carry on the litigation even in the absence of the original parties. *See Building & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994) (intervenor must have standing); *United States v. 36.96 Acres of Land*, 754 F.2d 855, 859 (7th Cir. 1985) (rejecting attempt by public interest group to intervene as plaintiff as of right for lack of standing and noting that "[t]he interest of a proposed intervenor . . . must be greater than the interest sufficient to satisfy the standing requirement"). Indeed, the Ninth Circuit has recognized that the "standing requirement is at least implicitly addressed by [the] requirement that the applicant must assert[] an interest relating to the property or transaction which is the subject of the action." *Sw. Ctr. for Biological*

---

[7] As discussed below, intervention is limited to existing claims. If, for purposes of judicial efficiency, the Court grants the proposed intervention and allows an additional claim to be added here, the other parties should be provided full and fair opportunity to raise issues of standing and any other legal arguments that may support dismissal of such a new claim or summary judgment, within the schedule established by this Court for a decision on the merits by early 2022. In addition, Lithium Nevada would respectfully request a separate brief or additional pages to address any such claim(s).

11

*Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (internal citations and quotation marks omitted).

"[T]he underlying rationale for this requirement is clear: because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on those parties." *Cleveland v. Nuclear Regulatory Comm'n*, 17 F.3d 1515, 1517 (D.C. Cir. 1994); *see also SEC v. Ross*, 504 F.3d 1130, 1150 (9th Cir. 2007) ("Intervention of right simply puts the intervenor into the position he would have been in had the plaintiff (or another party) properly named him to begin with."). Thus, in deciding whether prospective intervenors have a "significantly protectable interest" to justify their intervention, *Donaldson*, 400 U.S. at 531, the Court should consider whether they have asserted a protectable interest including any basis to claim violations of the NHPA.

### a. The BLM complied with the NHPA

Congress enacted the NHPA to "foster conditions under which our modern society and our historic property can exist in productive harmony." 54 U.S.C. § 300101(1). To this end, Section 106 of the Act requires a federal agency to consider the effect of its "undertakings"[8] on property of historical significance, which includes property identified to be of cultural or religious significance to Indian tribes. *Id*. §§ 306108, 302706(b). Section 106, like the National Environmental Policy Act, is often described as a "stop, look, and listen" provision. *See Narragansett Indian Tribe v. Warwick Sewer Auth.*, 334 F.3d 161, 166 (1st Cir. 2003) (quoting *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 805 (9th Cir. 1999) (per curiam)). The agency must consult with, inter alia, tribes "that attach religious or cultural significance to [affected] property." *Id*. § 302706(b). With this consultation, Section 106 is satisfied. In other words, the provision does not mandate that the permitting agency take any particular preservation measures to protect these resources. *See CTIA-Wireless Ass'n v. FCC*, 466 F.3d 105, 106-07 (D.C. Cir. 2006) (citing *Davis v. Latschar*, 202 F.3d 359, 370 (D.C. Cir. 2000)).

---

[8] An undertaking is defined broadly to include any "project, activity, or program" that requires a federal permit. Id. § 300320.

12

The NHPA established the Advisory Council on Historic Preservation ("ACHP") to implement the Act. The ACHP promulgates the regulations necessary to implement Section 106, *see* 54 U.S.C. § 304108(a), and these regulations "command substantial judicial deference." *McMillan Park Comm. v. Nat'l Capital Planning Comm'n*, 968 F.2d 1283, 1288 (D.C. Cir. 1992). A fundamental problem here is the Proposed Intervenors have never before come forward to raise their assertion that the Thacker Pass area is a "historic property" to have it declared a TCP or to provide the BLM notice or reason to identify the Proposed Intervenors as consulting parties. Therefore, allowing intervention on this newly asserted interest in the Thacker Pass area *years* after other authorizations for surface disturbance in the same area, years after this project review began and several months after this litigation started, prejudices Lithium Nevada and sets a dangerous precedent that would leave all federal authorizations, no matter how lengthy the approval process, open to challenges at any time based on newly disclosed information.

### (i) The regulations protecting "historic properties"

The ACHP has adopted regulations under Title 36, Part 800, for the Protection of Historic Properties. Section 800.2 of those regulations prescribe the requirements for "participants" in the Section 106 process. It identifies the parties who have consultative roles in the section 106 process. Indian tribes are among those parties with consultative roles, as identified in Section 800.2(c)(2), including on tribal lands under Section 800.2(c)(2)(i), and on historic properties of significance to Indian tribes under Section 800.2(c)(2)(ii). The BLM is required to consult with "representatives designated or identified by the tribal government." *Id.* 800.2(c)(2)(ii)(C). The BLM fulfilled this consultation here. To now authorize other members of the tribe to assert new and differing positions from those presented by the tribe's authorized members would render consultation a never ending and impossible to complete process: the BLM would not be able to rely on the authorized representatives and their positions but would instead have to somehow try to poll all differing views and put the agency in the impossible position of trying to resolve potentially differing views among the tribe's members.

The People are not an "Indian tribe" and thus are not consultative parties under section 106 or the implementing regulations. 36 C.F.R. 800.16(m) (defining Indian tribe as those

13

"recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians."); *see also* BLM Manual 8120, Glossary of Terms (defining "Indian tribe" as "any Indian or Alaska Native tribe, band, nation, pueblo, village, or community that the Secretary of the Interior acknowledges to exist as an Indian tribe.") (citing Public Law No. 103-454, 108 Stat. 4791, 25 U.S.C. 479a & Section .08). BLM Manual 8120 is clear that for "Groups and Communities that are not Federally Recognized" the BLM "*may* consult with non-recognized Native groups and communities *at its discretion*. However, there is no obligation in the cultural resource laws to do so. Non-recognized groups and communities and their individual members may participate in the BLM's decision making as members of the public." BLM Manual 8120 Section .08(C). Therefore, intervention for the People should be denied.

The Proposed Intervenors put forth in their moving papers their evidence of notice to the BLM in June 2021 and further assert that if provided consultation they will then advise the BLM of important information relative to their assertion of interest in the Thacker Pass area. (ECF 43-2 at 6,8). Based on their own filing with this Court, there was not a reason for the BLM to have known to identify the RS Colony or the People as possible consulting parties for the process. The BLM is required to "make a reasonable and good faith effort to identify any Indian tribes" that "attach religious and cultural significant to historic properties in the area of potential effects and invite them to be consulting parties." Given the Proposed Intervenors' acknowledgment that they will advise the BLM about the importance of the Thacker Pass area to their ancestors at some time in the future if they consult on the Project, it is clear they have never before provided this information. Allowing them to do so now at this late stage is prejudicial and inconsistent with the law, the governing policies and agreements in place and the need for finality following proper consultation and years of review before issuance of a federal agency's decision on a project.

**(ii) Proposed Intervenors provided no timely information to be consulted**

As prospective intervenors acknowledge, the State Historic Preservation Office ("SHPO") and the BLM have entered into a "State Protocol" for implementing the NHPA. Under

14

"Purpose" Section A of the State Protocol, BLM will invite consulting parties to participate in the Section 106 process if they have "expressed **prior** interest in a BLM undertaking or action subject to the Protocol . . .." (emphasis added)  The People of Red Mountain do not fall within these provisions and they do not assert in their filing or any of their declarations that prior to June 2021 they ever had "expressed prior interest" in the BLM's decision on the Thacker Pass project at issue here.  The People's intervention here should be denied.

The State Protocol provides that Native American participation will be guided by 36 CFR 800.2(c)(2)(ii)(A-F), the provisions of the BLM Manual 8120 and the latest addition of any associated Handbook.  The State Protocol provides for "Identification, Evaluation, and Treatment of Historic Properties" under Section V. *Id.* at 15.  Section V(A) establishes the BLM process for determining information needed.  Section V(A)(4) of the State Protocol requires that "[w]hen Indian tribes identify properties of religious and cultural importance, consultation with tribes to comply with the NHPA will be guided by the latest BLM manual and associated Handbook" . . . or by consultation procedures agreed to by BLM and a tribe through a signed Memorandum of Understanding ("MOU").  As RS Colony indicates in its filing, it had not previously identified properties in the Thacker Pass area to be of religious and cultural importance prior to June 2021 (long after the section 106 process had been completed for the ROD).[9]  Any consultation obligation arising from this recent identification by the RS Colony of its asserted interest could only recently arise once they provided the information in June 2021 and is not a proper basis to reopen the entire project.

With respect to the THPO for the RS Colony, she has not asserted that she was properly designated as the tribal representative for purposes of Section 106 or any request that the Thacker Pass area be considered a TCP, though she has worked for RS Colony for sixteen years.  Therefore, under BLM Manual 8120, concerning non-tribal lands, BLM Field Office managers

---

[9] With respect to lineal descendants who may be members of either of the Proposed Intervenors, under BLM Manual 8120 Section .08(D) it is clear that lineal descendants who may or may not be tribal members "have rights to claim human remains and associated funerary objects" and, where such individuals are already known to the BLM, "direct contact would be possible."  Again, no mandate as suggested by the People of Red Mountain exists nor is there any evidence that any such individuals were known or are now known to BLM.

15

would not consult with such a THPO for assistance in identifying and evaluating properties of traditional religious and cultural importance to the tribe. Sec. .08(E)(2)(b). This underscores a fundamental problem with the RS Colony only now asserting its interest in the project area. This is particularly true given the numerous prior authorizations for disturbance in the Thacker Pass area, as well as the land use planning process (completed most recently by the BLM in 2015) in which the relief now sought by the RS Colony – Long Term Preservation under 8110 – could have been considered under a request for creation of an Area of Critical Environmental Concern ("ACEC") – under 43 C.F.R. 1610.7-2.

Critical to the process here is that the tribe must have given some prior reasonable notice to the BLM of its interest in the Thacker Pass Area. For example, the tribe should have "informed the agency of the existence of" a sacred site. *Executive Order* 13007 (defining "sacred site" as a "specific, discrete, narrowly delineated location on Federal lands that is identified by an Indian tribe, or Indian individual determined to be an appropriately authoritative representative of an Indian religion, as sacred by virtue of its established religious significance to, or ceremonial use by, an Indian religion; **provided that the tribe or appropriately authoritative representative of an Indian religion has informed the agency of the existence of such a site.**" *Id.* at Sec. 1(b)(iii) (May 24, 1996). BLM Manual 8120 incorporates this definition of "sacred site" in the Glossary of Terms.

So, the problem here is twofold. *First*, the RS Colony does not explain how, when or whether the THPO was authorized by the tribal government as the designated representative to speak to the BLM on this Project or shared that she was designated as such any time before the filing with this Court last week. *Second*, Proposed Intervenors failed to inform the agency of the existence of a "sacred site" or TCP before its letter in June 2021, long after completion of the NHPA process for the project and the ROD. Once the BLM received the letter, the BLM, in its discretion, offered participation in the process that currently is underway under the ARPA (a separate and distinct process from the development and approval of the HPTP under the NHPA). It was within the agency's discretion to do so once the tribe requested consultation and provided notice to the BLM that it believes lands within the area to be "sacred." The BLM had no

16

obligation before receiving such notice and, could not reasonably be expected to have known this information given that it had not previously been shared.

### 3. Prospective Intervenors' Interest Will Not Be Impeded or Impaired Because Relief is Available Elsewhere & BLM Has Offered Consultation for the ARPA Permit

The pending ARPA Permit which is considered under a separate but related set of statutes and regulations, defines the process for notification to Indian tribes of possible harm to, or destruction of, sites on public lands having religious or cultural importance pursuant to Section 4(c) of the Archaeological Resources Protection Act. 43 C.F.R. Part 7, Sec. 4(c). Proposed Intervenors cite as their concern that the "BLM is poised to issue a permit to Lithium Nevada to begin desecration" of the Thacker Pass area. (ECF 43 at 5:4-5). But, the BLM already has offered, in its discretion, consultation to the Proposed Intervenors before issuing the ARPA permit. This consultation would, as they acknowledge, provide Proposed Intervenors the opportunity to share the information about their interest in the area and their ideas and proposals for any modification they assert is necessary to the cultural resource mitigation – this is the very purpose of the ARPA permit process.

Therefore, if their motion is denied, they can, through consultation on the ARPA permit, protect their interest. If they have objections following issuance of that permit and can establish they have standing they could seek to address concerns through a separate lawsuit once such claim becomes ripe. *See In re Holocaust Victim Assets Litigation*, 225 F.3d 191, 199 (2d Cir. 2000) ("Because appellants remain free to file a separate action, they have not established that they will be prejudiced if their motion to intervene is denied."); *Osage Tribe of Indians of Oklahoma v. United States*, 85 Fed. Cl. 162, 173 ("Numerous courts have found intervention to be inappropriate where relief is available elsewhere.") (internal quotation marks and citation omitted).

**B.   Proposed Intervenors Should Not Be Permitted to Intervene Permissively**

Proposed intervenors' alternative request for permissive intervention under Rule 24(b) also fails. Permissive intervention may be granted, in the Court's discretion, when the intervenors

17

have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Like intervention as of right under Rule 24(a), however, permissive intervention also requires a timely motion. Fed. R. Civ. P. 24(b). "Because timeliness is analyzed even more strictly for a motion for permissive intervention" than intervention as of right, an "alternative request for permissive intervention is necessarily untimely" when a prospective intervenor fails to satisfy the timeliness element for intervention as of right. *Chevron Envtl. Mgmt. Co. v. Envtl. Prot. Corp.*, 335 F.R.D. 316, 329 (E.D. Cal. 2020) (citation omitted). Prospective intervenors failed to establish their entitlement to intervention as of right under a more lenient standard relating to timeliness and thus their request for permissive intervention must be denied as untimely as well.

**C. If Allowed to Intervene, Proposed Intervenors' Claims Should Be Limited to the Claims Raised by Plaintiffs & They Should Be Held to the Existing Scheduling Order**

If proposed intervenors are allowed to intervene their claims should be limited to the claims brought by plaintiffs and they should be held to the existing scheduling order. "Once a court grants intervention, whether of right or by permission, the 'intervenor is treated as if [it] were an original party and has equal standing with the original parties.'" *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1246 (11th Cir. 2006) (citation omitted). But "an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944). In this regard, "conditions can be imposed even when a party intervenes as a matter of right under Rule 24(a)(2)." *Southern v. Plumb Tools*, 696 F.2d. 1321, 1322 (11th Cir. 1983).

> Rule 24(a) of the Federal Rules of Civil Procedure itself does not mention conditions or restrictions. The Advisory Committee Note to the 1966 Amendment of Rule 24(a), however, provides: "An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." There apparently were no decided cases which provided authority for this assertion. Even so, several courts have followed its lead and imposed restrictions on an intervenor of right.

*Id.* (citing 7A C. Wright & A. Miller, Federal Practice and Procedure, § 1922 at 624-25 (1972); *see also United States v. Blue Lake Power*, 215 F. Supp. 3d 838, 844 (N.D. Cal. 2016) (the court limited a tribe's intervention to just the Clean Air Act claims that the federal government had brought against the defendant; it could not assert state common law or tribal law claims); *Weeks v. Union Pac. R.R.,* 2018 U.S. Dist. LEXIS 50795 (E.D. Cal. 2018) (denying intervention when the prospective intervenor was looking to raise attorneys' fees issues that were ancillary to the main dispute about the railroad's employment practices).

If Proposed Intervenor's motion to intervene is granted, Lithium Nevada respectfully requests a condition of such intervention be that they must comply with the existing scheduling order approved by this Court and that Lithium Nevada and the BLM be allowed a separate brief or additional pages to respond to any such claim(s).[10]

## CONCLUSION

For all these reasons, prospective intervenors' motion to intervene should be denied, or at most, their claims should be limited to the claims brought by plaintiffs and they should be required to comply with the Court's existing scheduling order.

Dated: July 26, 2021.

/s/ *Laura K. Granier*
Laura K. Granier (SBN 7357)
Erica K. Nannini (SBN 13922)
HOLLAND & HART LLP
5441 Kietzke Lane, 2nd Floor
Reno, Nevada 89511

*Attorneys for Defendant-Intervenor Lithium Nevada Corp.*

---

[10] As noted above, Lithium Nevada reserves the right to raise all arguments to challenge and defend against such claims, including but not limited to any issues of standing, other jurisdictional and procedural issues, and any other legal arguments responsive to Proposed Intervenors' claim(s) if intervention is granted.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2021, I filed the foregoing using the United States District Court CM/ECF, which caused all counsel of record to be served electronically.

/s/ *Laura K. Granier*
Laura K. Granier (SBN 7357)

17118761_v1